Slip Op. 15-102

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SIGMA-TAU HEALTHSCIENCE, INC., A.K.A. SIGMA-TAU HEALTHSCIENCE, LLC, | |
| Plaintiff, | Before: Gregory W. Carman, Senior Judge |
| v. | Court No. 11-00093 |
| UNITED STATES, | |
| Defendant. | |

OPINION AND ORDER

[Plaintiff's motion for summary judgment is denied; Defendant's cross-motion for summary judgment is granted; Plaintiff's motion to strike is denied as moot.]

Dated: September 3, 2015

*Leslie A. Glick*, *John C. Monica, Jr.*, and *Christopher C. Yook*, Porter Wright Morris & Arthur LLP, of Washington, DC, for plaintiff.

*Alexander Vanderweide*, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of New York, NY, for defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Amy M. Rubin*, Assistant Director, International Trade Field Office. Of Counsel on the brief was *Yelena Slepak*, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY.

Carman, Senior Judge: Before the Court are cross motions for summary judgment and

Plaintiff's motion to strike certain expert testimony. *See* Pl.'s Mot. for Summ. J., ECF No. 64,

and Mem. in Supp. of Pl. Sigma-Tau HealthScience, Inc.'s Mot. for Summ. J., ECF No. 64-1

("Pl's MSJ"); Def.'s Cross-Mot. for Summ. J. and Def.'s Mem. in Supp. of Its Cross-Mot. for

Summ. J., ECF No. 68 ("Def.'s MSJ"); and Pl. Sigma-Tau HealthScience, Inc.'s Reply in Supp.

of its Mot. for Summary J./Opp'n to Gov't's Cross-Mot. and Mot. to Strike ("Pl.'s Reply"), ECF

No. 69.  Plaintiff Sigma-Tau HealthScience, Inc., a.k.a, Sigma-Tau HealthScience, LLC

("Sigma-Tau" or "Plaintiff") moves that the two products at issue in this case—(1) Acetyl L-

Carnitine Taurinate Hydrochloride with 1.5% Silica and (2) Glycine Propionyl L-Carnitine

Hydrochloride USP with 1.5% Silica (hereinafter collectively "products at issue" or "L-

Carnitine")—are vitamins and properly classifiable as "vitamins" under the Harmonized Tariff

Schedule of the United States ("HTSUS") subheading 2936.29.50, which carries duty free

treatment. Defendant U.S. Customs and Border Control ("Customs" or "Defendant") cross-

moves that the products at issue are not vitamins and properly classifiable as "quaternary

ammonium salts" under HTSUS subheading 2923.90.00. For the reasons stated below, the

products at issue are properly classified under HTSUS subheading 2923.90.00, and accordingly,

Defendant's motion for summary judgment is granted and Plaintiff's motion for summary

judgment is denied. In addition, Plaintiff's motion to strike is denied.


## BACKGROUND

This action originally involved fifteen entries of eight products imported by Plaintiff from

its Italian parent company into JFK International Airport, New York, between 2008 and 2010.

Def.'s MSJ at 1. The eight products are listed in Table A:[1]

---

[1] For ease of reference, the Court assigns product identification numbers to each of the subject
products as shown in Table A.

| Product ID No. | Product Chemical Name |
|---|---|
| 1 | Acetyl L-Carnitine Hydrochloride |
| 2 | Acetyl L-Carnitine Arginate Dihydrochloride, USP with 1.5% Silica |
| 3 | L-Carnitine Fumarate with 1.5% Silica |
| 4 | Lysine L-Carnitine Fumarate Hydrochloride with 1.5% Silica |
| 5 | L-Carnitine Inner Salt (also known as L-Carnitine Base) |
| 6 | L-Carnitine Hydrochloride |
| 7 | Acetyl L-Carnitine Taurinate Hydrochloride with 1.5% Silica (trade name L-Tauro) |
| 8 | Gycine Propionyl L-Carnitine Hydrochloride, USP with 1.5% Silica (trade name GlycoCarn) |

Compl. ¶13. Between 2009 and 2010, Customs liquidated and/or reliquidated Plaintiff's entries,

classifying Products 1, 3, 5, and 6 under HTSUS subheading K2923.90.00,[2] which entered duty

free, and Products 2, 4, 7, and 8 under HTSUS subheading 3824.90.92,[3] which carries a 5% duty.

Def.'s MSJ at 2. The K designation in this subheading indicates duty-free status in accordance

with HTSUS General Note 13.[4] *Id*. at 2 n.2. Plaintiff timely filed four protests against

Defendant's decision to classify Products 2, 4, 7 and 8 under HTSUS subheading 3824.90.92. *Id*.

at 3. In its protests, Sigma-Tau argued that all of its products, even those that Customs classified

---

[2] HTSUS subheading 2923.90.00 provides for "Quaternary ammonium salts and hydroxides; lecithins and other phosphoaminolipids, whether or not chemically defined: Other."

[3] HTSUS subheading 3824.90.92 provides for "Prepared binders for foundry mold or cores; chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included: Other: Other: Other: Other: Other."

[4] Without the K-designation the HTSUS subheading 2923.90.00 carries a 6.2% duty.

as duty-free under HTSUS subheading K2923.90.90, should be classified under subheading

2936.29.50. *Id.*

Plaintiff applied for further review of Protest Number 4701-09-100897 regarding

Products 1, 2, 7 and 8, which resulted in Customs issuing ruling letter HQ H081683 on August

27, 2010. *Id.* In that ruling, Customs confirmed that Product 1 was a "nonaromatic quaternary

ammonium salt compound provided for in the Pharmaceutical Appendix, and thus properly

classifiable duty-free under HTSUS subheading K2923.90.00." *Id.* However, Customs also

confirmed that Products 2, 7 and 8 "were mixtures of nonaromatic compounds, and were thus

properly classifiable under HTSUS subheading 3824.90.92." *Id.* Customs denied two of

Plaintiff's protests in part and denied two in full "in accordance with HQ H081683." *Id.*

Subsequently, in December 2011, Customs issued amended laboratory reports, which

concluded: (i) Products 2, 7, and 8 are separate chemically defined organic compounds and thus

are properly classifiable under HTSUS Chapter 29 as quaternary ammonium salts; and (ii)

Product 2 was provided for in the Pharmaceutical Appendix. *Id.* at 3-4.

On February 10, 2014, the parties agreed that Products 1 through 6 are provided for in the

Pharmaceutical Appendix and thus are properly classifiable as duty free under HTSUS

subheading K2923.90.00.[5] Partial Stipulated J. and Order, ECF No. 37 ("Partial Stipulated

Judgment"). Consequently, the two products remaining in controversy in this case are Product 7,

which is known by its trade name as L-Tauro, and Product 8, which is known by its trade name

as GlycoCarn. Def.'s MSJ at 4. Defendant explains that these two products could not be part of

---

[5] The tariff classification for six of eight of the products agreed upon by parties in the Stipulated
Judgment is Customs' proposed provision but with a K designation which grants duty free entry.

the K-designation stipulation because "neither taurinate nor glycine are provided for in the Pharmaceutical Appendix, [thus] these two products are not entitled to duty-free status with the K-designation." *Id.* The Clerk of the Court severed entries 237-1325768-3 and 237-1329667-3 from this case, since those two entries entirely encompassed products no longer at issue, assigned them a new case number, and disposed of that case by joint stipulation. *See* Court No. 14-00042, Stipulated J., ECF No. 3.

On October 20, 2014, Plaintiff moved for Referral to Court-Annexed Mediation and Defendant opposed. *See* ECF Nos. 48, 49. The Court denied the Motion for Referral to Court-Annexed Mediation in Slip Opinion 14-133, ECF No. 52. On November 7, 2014, Plaintiff moved to compel certain discovery but subsequently withdrew its motion. *See* ECF Nos. 50, 62. In its motion for summary judgment, Plaintiff also requests as a part of its summary judgment remedy "costs, expenses, and attorney's fees, as may be recoverable by law." Pl.'s MSJ at 35. Defendant counters that such request "is premature and wholly inappropriate at this time." Def.'s MSJ at 4 n.6. In any case, Plaintiff has not filed for costs in the form of a Bill of Costs pursuant to USCIT Rule 54(d)(1) or for fees in the form of an application pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and USCIT Rule 54.1.

Plaintiff moves the Court for summary judgment, arguing that L-Tauro and GlycoCarn are "properly classified as 'vitamins' under HTSUS heading 2936.29.50 and thus should be duty free." Pl.'s MSJ at 1. Defendant cross moves for summary judgment, arguing that these two products "are completely described by the terms of HTSUS heading 2923, as quaternary ammonium salts," and thus should be classified under HTSUS 2923.90.00. Def.'s MSJ at 4.

## DISCUSSION

### A.      Jurisdiction and Standard of Review

The Court has "exclusive jurisdiction of any civil action commenced to contest the denial

of a protest, in whole or in part, under section 515 of the Tariff Act of 1930" pursuant to 28

U.S.C. § 1581(a) (2012).[6] Summary judgment is appropriate when the record shows that "there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  USCIT R. 56(a). Parties agree there is no dispute about the facts and this case is ripe for

summary judgment. Pl.'s MSJ at 25; Def.'s MSJ at 6.

Although Customs enjoys a statutory presumption of correctness in its classification

decisions, this does not apply to pure issues of law in a summary judgment motion before the

Court.  *Universal Elec. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997). The Court

"does not defer to Customs' decisions because it has been tasked by Congress to conduct a *de

novo* review, and to determine the correct classification based on the record made before it."  *Id.*

at 493; *see also* 28 U.S.C. § 2640(a)(1). Ultimately, the Court's "duty is to find the *correct* result,

by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States*, 733

F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original).

Resolution of a disputed classification "entails a two-step process: (1) ascertaining the

proper meaning of specific terms in the tariff provision; and (2) determining whether the

merchandise at issue comes within the description of such terms as properly construed."

*Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999). When "the nature of the

---

[6] All references to the United States Code hereinafter refer to the 2012 edition, unless otherwise specified.

merchandise is undisputed, . . . the classification issue collapses entirely into a question of law."

*Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (internal citations omitted).

### B.       Proposed Classifications

The parties agree that the proper classification of the two products at issue hinges upon

the primary and only active component of the products, L-Carnitine. *See* Pl.'s MSJ at 4 ("L-

Carnitine is the biologically active component of the two products."); Def.'s MSJ at 22 (referring

to "carnitine as "the lone biologically active component" of L-Tauro and GlycoCarn). The

products at issue are listed as "L-Carnitine Compounds" on the protests. *See* Summons, ECF No.

1. Customs rulings demonstrate that subject merchandise which includes the active agent L-

Carnitine is typically classified as L-Carnitine. *See*, *e.g.*, N011436 (June 1, 2007) (classifying

Levocarnitine, also known as L-Carnitine, which is a trimethlyammonium salt derived from an

amino acid); NY F80631 (January 11, 2000) (classifying L-beta-hydroxy trimethylammonium

butyric acid, also known as L-Carnitine base). Accordingly, the Court's duty is to determine the

proper classification of L-Carnitine, which will apply to the two products at issue.

### 1.       HTSUS Heading 2936

Plaintiff contends that the products at issue are properly classified as vitamins in HTSUS

subheading 2936.29.50.[7] Pl.'s MSJ at 4. "Vitamins belong to a specific and unique category of

---

[7] HTSUS subheading 2936.29.50 covers:

> Provitamins and vitamins, natural or reproduced by synthesis
> (including natural concentrates), derivatives thereof used primarily
> as vitamins, and intermixtures of the foregoing, whether or not in
> any solvent: Vitamins and their derivatives, unmixed: Other
> Vitamins and their derivatives: Other: Other.

bioactive compounds, based on their vital role in the human body." Decl. of Yesu T. Das, Ph.D.

("Das Decl.") at ¶ 8, Pl.'s MSJ at Ex. J, ECF No. 64-4. Dr. Das, a chemist, explains:

> There is no single overarching common chemical structure of vitamins—vitamins are represented in a variety of chemical structures and no two vitamins have the same chemical structure. Therefore, products are classified as vitamins due to their functional use, not due a particular chemical structure.

Das Decl. at ¶5.

Sigma-Tau imports both products in "25 kg drums from Italy where it is produced as a bulk powder," and "sells the powder to intermediate manufacturers in the United States that further process it into (i) single vitamin tablets and/or pills and (ii) sports drinks or protein/food bars." Pl.'s MSJ at 4-5 (internal citations omitted). Plaintiff emphasizes that L-Carnitine "is also commonly known as 'Vitamin Bt' and appears on the HTSUS Pharmaceutical Appendix and other scientific sources." *Id*. at 5 (internal citations omitted). Drawing on similarities with vitamin D, Plaintiff offers the following definition of vitamin Bt:

> Vitamin Bt is produced in insufficient amounts by the human body for normal nutrition and must be supplemented by external sources, both in infants and adults. The two products at issue are simple analogs of Vitamin Bt in that their other chemical components have no biological activity in the human body and do not change the essential nature of the products. A deficiency in Vitamin Bt in children can lead to illness or death. In this way, Vitamin Bt is an essential nutrient to all humans. Clinical studies have shown that humans require an exogenous source of Vitamin Bt products from outside the body to supplement the body's limited internal endogenous production. The principal biological basis for the necessity of Vitamin Bt is its role in the body's energy generations. Specifically, it is a transporter for the fatty acids in the cells' mitochondria. Without it, the body is not able to properly generate energy.

*Id.* (internal citation omitted). In support of its contention, Plaintiff provided expert testimony

about vitamin Bt from a chemist, definitions of carnitine and vitamin Bt[8] in the Merriam Webster

dictionary, and excerpts from scientific texts. *See* Pl.'s MSJ at Ex. G.

Plaintiff further asserts that its proposed heading is "a principle use provision" and thus is

"governed by the Additional Rule of Interpretation (ARI) 1(a): '[A] tariff classification

controlled by use (other than actual use) is to be determined in accordance with the use in the

United States at, or immediately prior to, the date of importation, of goods of that class or kind to

which the imported goods belong, and the controlling use is the principle use." Pl.'s MSJ at 26

(citing *Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1363 (Fed. Cir. 1999)). Plaintiff insists

that it has "put forward an abundance of affirmative evidence demonstrating that its products at

issue meet all of the *Carborundum* factors[9] because [the products at issue] have all of the

physical characteristics of vitamins, are sold in stores that specialize in vitamins (*e.g.* The

---

[8] L-carnitine refers to the levo-optical rotation of carnitine. *See* Def.'s MSJ at 8 n.8. Parties agree
that there is no functional difference between L-carnitine and carnitine and use these terms
interchangeably. So will the Court.

[9] The *Carborundum* factors, which are used to determine which goods are commercially fungible
with the imported goods, include:

> use in the same manner as merchandise which defines the class; the
> general physical characteristics of the merchandise; the economic
> practicality of so using the import; the expectation of the ultimate
> purchasers; the channels of trade in which the merchandise moves;
> the environment of the sale, such as accompanying accessories and
> the manner in which the merchandise is advertised and displayed;
> and the recognition in the trade of this use.

*Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312-13 (Fed. Cir. 2012) (citing *United
States v. Carborundum Co.*, 63 CCPA 98, 536 F.2d 373, 377 (1976)).

Vitamin Shoppe), are purchased by other companies as vitamins, are used by end-users as

vitamins, are advertised as vitamins, are deemed vitamins by many scholarly articles provided to

Customs as part of Plaintiff's protests, and are recognized as vitamins in the industry in which

Sigma-Tau operates as vitamin manufacturer." *Id.* at 27. To supports its proposition that L-

Carnitine is a vitamin, Plaintiff cites the deposition of Dr. Ken Hassen, CEO of Sigma-Tau (Dep.

of Dr. Ken Hassen ("Hassen Dep."), Pl.'s MSJ at Ex. E, ECF No. 64-3), and the declaration of

Dr. Das, expert chemist for Sigma-Tau. *Id.* at 28. Plaintiff asserts that Defendant offered no

rebuttal evidence regarding how the products at issue are actually used, and therefore, "the

evidence shows that the products at issue are properly classified as vitamins, specifically under

HTSUS 2936.29.50." *Id.* at 29.

Plaintiff further asserts that the products at issue are properly classified by using the rule

of relative specificity of GRI 3(a). Plaintiff purports that its principle use provision trumps

Defendant's *eo nomine* provision because the "general rule" is that the product is "generally

more specifically provided for under the use provision." *Id.* at 32 (quoting *BASF Corp. v. United*

*States*, 497 F.3d 1309, 1315 (Fed. Cir. 2007)).

**2.       HTSUS Heading 2923**

Customs contends that the products at issue are properly classified as quaternary

ammonium salts in HTSUS subheading 2923.90.00.[10] Def.'s MSJ at 7. While admitting that the

"identity of Vitamin Bt as carnitine was established in 1951," Customs asserts that "the

---

[10] HTSUS subheading 2923.90.00 covers:

> Quaternary ammonium salts and hydroxides; lecithins and other
> phosphoaminolipids, whether or not chemically defined: Other.

description of carnitine as Vitamin Bt has little use or applicability today, and has no bearing on

whether the substance functions as a vitamin in humans or is classified as a vitamin for tariff

purposes." *Id*. at 26 (internal citations omitted). Customs explains that the "t" of vitamin Bt

stands for "*Tenebrio*," a group of several mealworms that demonstrated a dietary need for

carnitine in the original study. *Id*. Customs argues, however, that calling carnitine "Vitamin Bt"

is a misnomer because "neither carnitine nor Vitamin Bt is recognized as a vitamin in humans."

*Id*. at 27.

Customs further contends that Plaintiff's products are not akin to vitamin D. *Id*. at 28.

Customs expounds that even though L-Carnitine "has an essential role in metabolism, it is not a

vitamin, because the body of a normal individual makes a sufficient amount for daily needs." *Id*.

at 25 (quoting Def.'s MSJ at Ex. S, B. Burge, "Carnitine in Energy Production," Healthline (July

1999) at 9). Customs offers that L-Carnitine is a conditionally essential nutrient only for rare

people who, for "genetic or medical reasons," cannot produce sufficient amounts in their body.

*Id*. at 25 (internal citations omitted). Customs posits that Plaintiff's "reliance on vitamin D's

classification designation to support its preferred tariff subheading is misplaced, as is [Plaintiff's]

comparison of vitamin D" to the products at issue.  *Id*. at 28. Defendant explains that, unlike

vitamin Bt, "vitamin D is specifically provided for *eo nomine*[11]" under HTSUS subheading

2936.29.5020, and is "listed as a vitamin in the Explanatory Note to heading 2936." *Id*. at 28-29.

Defendant posits that vitamin D differs from L-Carnitine in that vitamin D "is usually produced

---

[11] *Eo nomine* means an item is "identified by name." *Len-Ron Mfg. Co., Inc. v. United States*,
334 F.3d 1304, 1308 (Fed. Cir. 2003).

in quantities low enough to necessitate dietary supplementation for health" versus L-Carnitine, which is "sufficiently synthesized and abundant in our bodies." *Id.* at 30.

Accordingly, Customs claims that Plaintiff's proposed provision, HTSUS heading 2936, "does not even partially describe the products" at issue and that its own proffered provision, HTSUS heading 2923, "is the only heading that encompasses the two products at issue." *Id.* at 7. Defendant asserts that "no analysis beyond GRI 1 is needed because the imported merchandise is not *prima facie* classifiable in more than one HTSUS provision." *Id.*

### 3.    HTSUS Heading 3824

HTSUS heading 3824 was the basis for Customs' denial of Plaintiff's protests pursuant to HQ H081683. *See* Pl.'s MSJ at 2. Large swaths of Plaintiff's briefs are devoted to detailing Customs' erroneous classification of the products at issue as "chemical products and preparations of the chemical or allied industries (including those consisting of mixtures of natural products), not elsewhere specified or included" under HTSUS subheading 3824.90.92.[12] *See, e.g.*, Pl.'s MSJ at 5-18; Pl.'s Reply at 1-3. Customs originally classified the products at issue under this tariff provision in HQ H081683, and Plaintiff argues that Customs is bound to the classification stated in that ruling letter in this litigation. *See* Pl.'s MSJ at 32. While the Court agrees that Customs was bound by the tariff provision stated in its ruling letter for the purpose of classifying entries, the Court disagrees that Customs is bound to argue for the application of an admittedly

---

[12] The Court notes that Plaintiff refers to this provision throughout its papers as merely "foundry mold materials," but Defendant asserts that it "never classified the products at issue as 'foundry mold material.'" Def.'s MSJ at 17 n.19. Rather, Defendant explains that its Newark laboratory originally erroneously classified the products at issue under the basket segment of this provision as "mixtures of nonaromatic compounds excluded from classification in Chapter 29, HTSUS." *Id.* at 15.

erroneous classification in this litigation.[13] While arguably useful as background, the Court finds

that arguments regarding HTSUS subheading 3824.90.92 for the products at issue are moot

because Customs correctly conceded "that HQ H081683 incorrectly classified the two products

at issue" under HTSUS heading 3824. Def.'s MSJ at 18. Consequently Customs "disavowed the

accuracy of this tariff designation." Def.'s Reply to Pl.'s Resp. to Def.'s Cross-Mot. for

Summary J. ("Def.'s Reply") at 2. Consequently, Plaintiff's assertions regarding Customs'

concession as an invalid attempt to change its classification are without merit. *See* Pl.'s MSJ at

17.

In the case at hand, the Court's duty is to determine *de novo* the correct classification of

the products at issue. Any admittedly erroneous classifications by Customs in the past are not

pertinent to proper classification by the Court moving forward. The Court gives little weight to

Plaintiff's arguments regarding HTSUS heading 3824. Defendant's concession of error regarding

ruling letter HQ H081683 benefitted Plaintiff and led to a partial settlement of this case. The

Court agrees with the parties that HTSUS heading 3824 is inapplicable to the products at issue in

this case.

C.     GRI Analysis

Classification of merchandise is governed by the HTSUS General Rules of Interpretation

("GRIs"). *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005). The

GRIs direct "the proper classification of all merchandise and are applied in numerical order."

---

[13] It does not escape the Court's attention that Plaintiff proposes a tariff classification here that differs from the one asserted on its entry papers.

*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). The Court may not

consult any subsequent GRI unless the proper classification cannot be determined by reference to

GRI 1. *See Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998). According

to GRI 1, "classification shall be determined according to the terms of the headings and any

relative section or chapter notes[.]" The possible headings are to be evaluated without reference

to their subheadings, which cannot be used to expand the scope of their respective headings. *See*

*Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). "Only after

determining that a product is classifiable under the heading should the court look to the

subheadings to find the correct classification for the merchandise." *Id*. Tariff terms are

"construed according to their common and commercial meanings, which are presumed to be the

same absent contrary legislative intent." *Len-Ron*, 334 F.3d at 1309; *see also Medline Indus., Inc.*

*v. United States*, 62 F.3d 1407, 1409 (Fed. Cir. 1995) ("Tariff terms are construed in accordance

with their common or popular meaning.")

    1.    **GRI 1**

        a.    **HTSUS Heading 2923**

    The parties submit that the products at issue fall under Chapter 29 "Organic Chemicals."

The Court agrees. Next the Court considers the possible headings under Chapter 29. The Court

contemplates the first possible HTSUS heading, 2923, simply because it comes first in the

numerical order. The first step to resolve a disputed classification is to ascertain "the proper

meaning of specific terms in the tariff provision." *Pillowtex*, 171 F.3d at 1373. This heading lists

*eo nomine* chemical compounds, and the first enumerated chemical compound is quaternary

ammonium salts. The next step is to determine "whether the merchandise at issue comes within

the description of such terms." *Id*. It is undisputed that L-Carnitine is a quaternary ammonium salt. Accordingly, L-Carnitine is classifiable in HTSUS heading 2923. Further, a review of Customs rulings shows that Customs has previously classified other L-Carnitine products under this heading. *See*, *e.g.*, N011436 (June 1, 2007) (classifying L-Carnitine from the Czech Republic as tariff number 2923.90.00 with a free duty rate under EN13); NY D80631 (January 11, 2000) (classifying L-Carnitine from Japan as tariff number 2923.90.00); NY E82956 (June 18, 1999) (classifying Acetyl-L-Carnitine from Italy as tariff number 2923.90.00 with a free duty rate under EN13).[14]

Further, Plaintiff does not dispute that its products at issue could be included in this heading. Instead, Plaintiff argues that this heading is less specific under the rule of relative specificity pursuant to GRI 3(a) than its own proposed heading. The Court finds that since L-Carnitine is chemically known as a quaternary ammonium salt it is *prima facie* classifiable in HTSUS heading 2923.

### b.      HTSUS Heading 2936

The Court contemplates the next possible HTSUS heading, 2936, which provides for vitamins. The first step is to ascertain the meaning of the terms in the heading. *See Pillowtex*, 171 F.3d at 1373. This heading covers all kinds of provitamins and vitamins and their derivatives used as such. In construing a tariff term, the court may rely on its own understanding of the term

---

[14] Defendant elucidates that NY E82956 is "a ruling not at issue in this case," but a proposed modification to it was "the genesis of the amended laboratory reports," which led Customs to reevaluate HQ H081683. Def.'s Reply at 3-4. This ruling letter has not yet been revoked, despite Plaintiff's allegation.

as well as upon lexicographic and scientific authorities and other reliable sources. *Kahrs Int'l,*

*Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) (internal quotations omitted). The Court

notes that vitamin Bt is defined as carnitine in Webster's Dictionary. *See Webster's Third New*

*International Dictionary* 2559 (1981).[15] Also, under the definition for "carnitine" are the words

"called also *vitamin Bt*." *Id*. at 340.[16] Further, Defendant does "not dispute that carnitine was

called Vitamin Bt" when first discovered. Def.'s MSJ at 26.

---

[15] L-Carnitine is vitamin Bt. *See* Vitamins and Health Supplements Guide, available at
http://www.vitamins-supplements.org/carnitine.php (last visited Aug. 31, 2015).

[16] "L-carnitine" is explained as follows:

> L-carnitine supplements are used to increase L-carnitine levels in people whose natural level of L-carnitine is too low because they have a genetic disorder, are taking certain drugs (valproic acid for seizures), or because they are undergoing a medical procedure (hemodialysis for kidney disease) that uses up the body's L-carnitine. It is also used as a replacement supplement in strict vegetarians, dieters, and low-weight or premature infants.

> L-carnitine is used for conditions of the heart and blood vessels including heart-related chest pain, congestive heart failure (CHF), heart complications of a disease called diphtheria, heart attack, leg pain caused by circulation problems (intermittent claudication), and high cholesterol.

> Some people use L-carnitine for muscle disorders associated with certain AIDS medications, difficulty fathering a child (male infertility), a brain development disorder called Rett syndrome, anorexia, chronic fatigue syndrome, diabetes, overactive thyroid, attention deficit-hyperactivity disorder (ADHD), leg ulcers, Lyme disease, and to improve athletic performance and endurance.

(footnote continued)

The next step is to determine if the products at issue fall within the meaning of the terms.

*Pillowtex*, 171 F.3d at 1373. Defendant asserts that L-Carnitine is a "conditionally essential

nutrient" "principally used as ingredients in workout supplements, not vitamins." Def.'s MSJ at

24, 33. Defendant further asserts that L-Carnitine does not fit into the definition of vitamin

provided in the Explanatory Notes ("EN") to Section VI, Chapter 29, Sub-Chapter XI:

> Vitamins are active agents, usually of complex chemical
> composition, which are obtained from outside sources and are
> essential for the proper functioning of human or other animal
> organisms. They cannot be synthesised [sic] by the human body and
> must therefore be obtained in final or nearly final form (provitamins)
> from outside sources. They are effective in relatively minute
> amounts and may be regarded as exogenous biocatalysts, their
> absence or deficiency giving rise to metabolic disturbances or
> "deficiency diseases."

While the Court may refer to the ENs accompanying the tariff provisions, the ENs are not

binding. Upon review of this EN in particular, the Court notes that portions of it contradict the

tariff term that it should be explaining, and therefore, the Court disregards those portions of the

explanation. The portions of the EN which read that vitamins "*cannot* be synthesised [sic] by the

---

The body can convert L-carnitine to other amino acids called acetyl-L-carnitine and propionyl-L-carnitine. But, no one knows whether the benefits of carnitines are interchangeable. Until more is known, don't substitute one form of carnitine for another.

WebMD, available at http://www.webmd.com/vitamins-supplements/ingredientmono-1026-l-carnitine.aspx?activeingredientid=1026&activeingredientname=l-carnitine (last visited Aug. 31, 2015). This popular source lists L-Carnitine under the category of "vitamins and supplements." *Id.*

human body" and "may be regarded as exogenous biocatalysts" directly contradict the fact that an enumerated vitamin, Vitamin D, in the tariff subheading is synthesized in the body and produced endogenously. *See* Pl.'s MSJ at 15, Def.'s MSJ at 28-29. A non-binding explanatory note that directly conflicts with a tariff's enumerated items is afforded very little weight. Accordingly, L-Carnitine is classifiable in HTSUS heading 2936.

Upon consideration of these scientific and lexicographic authorities, the Court finds that since L-Carnitine is commonly known as vitamin Bt it is *prima facie* classifiable in HTSUS heading 2936.

### 2.      GRI 3[17]

When goods are *prima facie* classifiable under two headings in the HTSUS, "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description." GRI 3(a); *see also Kahrs*, 713 F.3d at 647. This is called the rule of relative specificity. *See Len-Ron*, 334 F.3d at 1313. Under this rule, the Court looks to "the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Id.* (internal citations omitted). Plaintiff avers that the rule of relative specificity directs that use provisions trump *eo nomine* provisions in the HTSUS. *See* Pl.'s MSJ at 32-34; Pl.'s Reply at 13-14. It is a "convenient rule of thumb" that a "product described by both a use provision and an *eo nomine* provision is generally more specifically provided for under the use provision" but only when "the competing provisions are in balance." *Kahrs*, 713 F.3d at 647 (internal quotations and citations omitted).

---

[17] GRI 2 is inapplicable because it relates to incomplete or unfinished articles or mixtures or combinations.

It is undisputed that HTSUS heading 2923 is an *eo nomine* provision, but disagreement arises as to HTSUS heading 2936. While Plaintiff asserts that HTSUS 2936 is a use provision, Defendant counters that it is a hybrid of an *eo nomine* provision and a use provision. Def.'s MSJ at 33.  Upon application of the *Carborundum* factors, Plaintiff concludes that the products at issue are principally used as vitamins. Pl.'s MSJ at 27-29. Therefore, Plaintiff asserts that its products are vitamins under the principal use provision. However, Defendant takes issue with Plaintiff's assertion that HTSUS heading 2936 is wholly a use provision.

Defendant parses the heading and offers that the first segment of the heading, "provitamins and vitamins, natural or reproduced by synthesis (including natural concentrates)," is an *eo nomine* provision, but the second segment "derivatives thereof used primarily as vitamins" is a use provision. Def.'s MSJ at 33. The Court agrees. Thus, the Court must decide whether L-Carnitine falls under the *eo nomine* or use part of heading 2936.

Plaintiff maintains that L-Carnitine is vitamin Bt, which falls under the tariff term "vitamins" within the *eo nomine* part of the provision. Pursuant to *Jarvis Clark*, the Court considers if L-Carnitine also falls under the use part of the provision, "derivatives thereof used primarily as vitamins" of HTSUS heading 2936. The Court first notes that the term "thereof" relates back to the first phrase, "provitamins and vitamins." The term "thereof" cannot mean merely any substance. Accordingly, to fall under the rubric of the use part of heading 2936, L-Carnitine would have to be a derivative of a vitamin or a provitamin and be used as a vitamin.

The Court then looks to the common meaning of these terms in Webster's Dictionary. The definition of the term "derivative" is "made up of or marked by elements or qualities of something else." *Webster's*, *supra*, at 608. The definition of provitamin is "a precursor of a

vitamin that can be converted into a vitamin in the organism." *Id.* at 1827. The example provided

in the dictionary is that ergosterol is a provitamin of vitamin D2. *Id.* Applying these definitions

to L-Carnitine, the Court finds that L-Carnitine is actually vitamin Bt, not a derivative of vitamin

Bt, and does not fall under the use part of the provision. Therefore, L-Carnitine only falls under

the *eo nomine* segment of HTSUS heading 2936. Accordingly, the Court must compare the two

competing provisions through an *eo nomine* lens.

Applying the rule of relative specificity to the terms "quaternary ammonium salts" and

"vitamins," the Court finds that the term "quaternary ammonium salts" more specifically

describes L-Carnitine than "vitamins" because the chemical name wholly describes the products

and is specifically enumerated as the first item in the heading.[18] Hence, L-Carnitine is properly

classified under HTSUS heading 2923. Next the Court looks for the proper subheading within

heading 2923. Upon review of the possible subheadings, the Court finds that the proper

subheading is 2923.90.00, which is a basket provision for "Other."

### 3.    General Note 13

The Court finally considers whether the products at issue are listed in the Pharmaceutical

Appendix, which is designated with a K and afforded duty free treatment pursuant to General

Note 13 to the HTSUS, which provides:

> [w]henever a rate of duty of "Free" followed  by the symbol "K" in
> parentheses appears in the "Special" subcolumn for a heading or
> subheading, any product (by whatever name known) classification
> the such which is the product of a country eligible for tariff treatment
> under column 1 shall be entered free of duty, provided that such
> product is included in the  pharmaceutical  appendix  to  the  tariff

---

[18] This may have been a different case if "vitamin Bt" itself was enumerated in heading 2936 but it is not.

> schedule. Products in the pharmaceutical appendix include the salts, esters and hydrates of the International Non-proprietary Name (INN) products enumerated in table 1 of the appendix that contain in their names any of the prefixes or suffices listed in table 2 of the appendix provided that any such salt, ester or hydrate is classifiable in the same 6 digit tariff provisions as the relevant product enumerated in table 1.

General Note 13 to the HTSUS. Thus to qualify for K designation, the products at issue must be listed in both Table 1 <u>and</u> Table 2. Table 1 lists the base compound and Table 2 lists prefixes and suffixes around the base compound. Customs concedes that L-Carnitine is listed in Table 1; however, Customs postulates that the products at issue do not qualify for K designation because the prefixes—taurinate of L-Tauro and glycine of GlycoCarn—are not listed in Table 2. Plaintiff argues in the alternative that these products, if classified under HTSUS head 2923, qualify for duty free treatment because L-Carnitine is listed in Table 1, but Plaintiff does not even mention Table 2. *See* Pl.'s MSJ at 11 n.4. The Court finds Defendant's reading of General Note 13 to be the correct interpretation, requiring that the products at issue are found in both Tables 1 and 2. Taurinate and glycine are not found on Table 2, and the requirements for K designation are not satisfied. Therefore, the Court finds that L-Tauro and Glycocarn do not qualify for K designation. Accordingly, the Court holds that the products at issue are properly classified under HTSUS subheading 2923.90.00.

## CONCLUSION

For the reasons stated above, the Court agrees with Defendant that tariff subheading 2923.90.00, HTSUS, applies to the products at issue. Plaintiff's Motion for Summary Judgement is therefore denied, and Defendant's Cross Motion for Summary Judgment is granted. Finally,

Plaintiff's motion to strike "and preclude any purported expert testimony or opinions not

properly disclosed or supported by scientific authority pursuant to Rules 26 and 37" is denied as

moot. Pl.'s Reply at 8-10.[19] Judgment will enter accordingly.


                                        /s/      Gregory W. Carman
                                        Gregory W. Carman, Senior Judge

Dated:  September 3, 2015
          New York, New York

---

[19] The Court did not rely on Dr. Matthew Birck's testimony as an expert in its analysis.